SWEETS COMPANY OF AMERICA, INC. (A NEW YORK CORPORATION), PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SWEETS COMPANY OF AMERICA, INC. (A VIRGINIA CORPORATION), PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6522, 20193.   Promulgated July 11, 1928.

Philip S. Peyser, Esq., and Felix H. Levy, Esq., for the petitioners. J. Harry Byrne, Esq., for the respondent.

OPINION.

LOVE: The preliminary question to be decided is whether Commissioner Blair had the power to reverse the ruling of a predecessor in office in the circumstances here presented. In 1920, before making a return for 1919, the Virginia Sweets Co. applied to the then Commissioner for advice as to whether separate returns would be required for itself and for the other two corporations for the respective periods they were in existence and affiliated, or whether a single consolidated return should be made for the entire calendar year. The Commissioner then in office wrote a letter to the petitioner stating that the three companies "may * * * file a consolidated tax return for the calendar year 1919." In 1923, Commissioner Blair reversed this ruling and decided that two returns should be filed covering different periods within the year when the constituency of the affiliated group was different. The ruling involved a construction of the law, and not the determination of any question of fact. Without here going into an extended discussion of the reasons, since the question has already been decided by the Board, we see no legal objection to a reversal of a prior Commissioner's interpretation of the law which the present incumbent concludes is erroneous. The Commissioner's duty to determine the taxpayer's true tax liability would compel him to reverse a prior ruling of law in a particular case if he concluded it was a wrong interpretation. *Estate of W. S. Tyler*, 9 B. T. A. 255; *Yokohama Ki-Ito Kwaisha, Ltd.*, 5 B. T. A. 1248. *Cf. Dallas Brass & Copper Co.*, 3 B. T. A. 856; *James Couzens*, 11 B. T. A. 1040. The language of section 273 (1), Revenue Acts of 1924 and 1926, defining a deficiency clearly contemplates the possibility of previous determinations.

It is contended, however, on behalf of the Virginia Sweets Co. that, even though it should be held that the incumbent Commissioner had power to assert this liability against the New York Sweets Co., the Virginia Sweets Co., as the transferee, is entitled to every equity which would be available to it in a court of equity and, hence, under the circumstances of this case, Commissioner Blair is estopped by reason of the acts of the prior Commissioner to assert this liability against the Virginia Sweets Co.

The successive mergers of the Lance Cough Drop Co. into the New York Sweets Co., and of the latter into the Virginia Sweets Co. were made under and pursuant to the following statute of the State of New York:

Any domestic stock corporation and any foreign stock corporation authorized to do business in this state lawfully owning all the stock of any other stock corporation organized for, or engaged in business similar or incidental to that of the possessor corporation may file in the office of the secretary of the state, under its common seal, a certificate of such ownership, and of the resolution of its board of directors to merge such other corporation, and thereupon it shall acquire and become, and be possessed of all the estate, property, rights, privileges and franchises of such other corporation, and they shall vest in and be held and enjoyed by it as fully and entirely and without change or diminution as the same were before held and enjoyed by such other corporation, and be managed and controlled by the board of directors of such possessor corporation, and in its name, but without prejudice to any liabilities of such other corporation or the rights of any creditors thereof. * * * (Sec. 15, Stock Corporation Law of 1909, ch. 61; Consol. Laws ch. 59.)

The New York courts, in construing this section, hold that the possessor corporation does not acquire absolute title to the property, estate and franchises of the merged corporation; that as to a person in whose favor a liability existed at the time of the merger, the property, or any avails of the same, if disposed of, constitutes a trust fund and is held by the possessor corporation as trustee for the protection and benefit of creditors. *Syracuse Lighting Co.* v. *Maryland Casualty Co.*, 226 N. Y. 25; 122 N. E. 723; *Irvine* v. *New York Edison Co.*, 207 N. Y. 425; 101 N. E. 358.

The Virginia Sweets Co. does not question its liability for the amount of any deficiency in tax that may be found to be due, except upon the ground that Commissioner Blair is estopped from asserting such tax against it, since it results from a reversal of the prior ruling. It is unnecessary, however, to discuss the availability of the Virginia Sweets Co. of the doctrine of equitable estoppel in this proceeding, because we are satisfied that the requisite elements of estoppel do not appear. It is sufficient here to point out that a statement, in order to constitute an estoppel, must relate to a matter of fact. A ruling by the Commissioner has not a *res adjudicata* effect. This petitioner, in case the ruling had been unfavorable to it, could have obtained a judicial determination of the question. The general rule is that a statement by one of the parties on a question of law where both parties have knowledge of the facts, can not create an estoppel. 21 C. J. 1147, 1148; *Ward* v. *Ward*, 131 Fed. 946. We see no reason for applying any different rule in the present situation. It may be pointed out, further, that it does not appear that the Virginia Sweets Co. was misled to its disadvantage or changed its position in reliance thereon.

The next point to be considered is the merits of the ruling of Commissioner Blair directing the filing of two returns for the two different six-months periods. Corporations which are affiliated are re-

quired to make a consolidated return of net income and invested capital. Sec. 240 (a), Revenue Act of 1918. For the purpose of computing income and profits tax, they are to be treated as a unit. *Gould Coupler Co.*, 5 B. T. A. 499. There is no question but that the New York Sweets Co. and the Lance Cough Drop Co. were affiliated and that there were no other members of the affiliation between January 1 and June 30, 1919. Also, these two corporations and the Virginia Sweets Co. were affiliated from and after about July 1 until the end of October, 1919. From July 1 the group was not the same as it had been before, and we think it must be regarded as a different taxable unit from that which existed before the Virginia Sweets Co. became a member. The petitioners point to the fact that the Virginia Sweets Co. was a holding company merely and not engaged in business, and assert that it was organized for the purpose of strengthening the financial position of the original company. We do not see that these facts affect the principle. Its becoming a member of the group may very materially affect the consolidated invested capital. While the group was thus constituted it was a different taxable unit from the one previously existing because there was a new member, having invested capital which had to be reckoned in the consolidated invested capital, and necessarily affecting the computation of the tax. *American La Dentelle, Inc.*, 1 B. T. A. 575. See *Gould Coupler Co.*, 5 B. T. A. 499, 515, *et seq.* Also, the Virginia Sweets Co., as the sole corporation existing after October 31, 1919, is not the same taxable unit as the group existing before this date, composed of this company and the two New York corporations, in affiliation. The fact that the other two corporations were merged into the Virginia Sweets Co. and the latter acquired the assets and business of the others is immaterial. Only corporations which are affiliated are required to make a consolidated return. After October 31 there was only one corporation and hence no affiliation. The requirements of Section 240 (a) and of the decisions thereunder, for the making of a consolidated return of net income and invested capital of affiliated corporations have no application to a sole corporation. Three returns should be made, viz: a consolidated return for the New York Sweets Co. and the Lance Cough Drop Co.; a consolidated return for the group composed of those two companies and the Virginia Sweets Co., and a return for the Virginia Sweets Co. as a sole corporation.

In determining the consolidated invested capital of the New York Sweets Co. and the Lance Cough Drop Co., the Commissioner found the invested capital at the beginning of the year, made certain adjustments therein which are not in dispute and took one-half of the

adjusted amount as the invested capital for the six months ending June 30. Section 326 (d) of the Revenue Act of 1918, provides:

The invested capital for any period shall be the average invested capital for such period, but in the case of a corporation making a return for a fractional part of a year, it shall * * * be the same fractional part of such average invested capital. * * *

We think the Commissioner's determination in this regard was correct. *Louis Hymel Planting & Manufacturing Co.*, 5 B. T. A. 910. See also memorandum and decision upon redetermination in *Younker Bros. Inc.*, Docket No. 5522 (8 B. T. A. 333).

The remaining question is whether the net losses of the Virginia Sweets Co. or of the affiliated group which existed between July 1 and October 31, 1919, may be deducted from the net income of the affiliated group existing during the first six months of the year. The petitioners claim the right to this deduction under section 204 (b), Revenue Act of 1918, which is as follows:

If for any taxable year beginning after October 31, 1918, and ending prior to January 1, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount of such net loss shall under regulations prescribed by the Commissioner with the approval of the Secretary be deducted from the net income of the taxpayer for the preceding taxable year; and the taxes imposed by this title and by Title III for such preceding taxable year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with the provisions of section 252. If such net loss is in excess of the net income for such preceding taxable year, the amount of such excess shall under regulations prescribed by the Commissioner with the approval of the Secretary be allowed as a deduction in computing the net income for the succeeding taxable year.

It will be observed that this section provides that the net loss of any taxable year ending within the time limits specified may be deducted from the net income of the preceding taxable year. The first difficulty in any attempt to find a basis for allowing the deduction of the net losses here is that the preceding year is not before us. Each of the returns here required is for the same taxable year and hence the present case is not within the terms of the statute. The situation is different from *Carroll Chain Co.*, 1 B. T. A. 38, cited by petitioners. There the corporation taxpayer was in existence eight months prior to the date marking the close of its fiscal year. The Board held that the twelve months preceding that date measured its taxable year, even though it was not operating during the entire twelve months; and it was permitted to deduct the net loss of such taxable year from net income of the succeeding taxable year under the "net loss" provision of the Revenue Act of 1921.

In *Norfolk Knitting Mills Corporation*, 5 B. T. A. 792, also cited, a net loss in 1919 was permitted to be deducted from net income of 1918; and this case likewise does not support petitioner's contention. Aside from the objection already stated to the relief sought, is the obstacle that we have here different taxable units. Insofar as the Virginia Sweets Co. is concerned there is a different corporation. Under no principle of law with which we are acquainted may it be regarded as the same "taxpayer" as the New York Sweets Co. In *White House Milk Co.*, 2 B. T. A. 860, it was held that a corporation which took over the assets and business and assumed the liabilities of another corporation may not deduct from its net income the net loss of the predecessor under the Revenue Act of 1921.

It may be argued that this is not a valid objection to the deduction by the New York Sweets Co. of its net loss in the four months following June 30 from net income in the preceding six months in the same year. As we have already pointed out, the Revenue Act (section 240 (a)) requires that affiliated corporations shall make a consolidated return, and that the tax shall be computed as a unit. In each of the periods referred to the New York Sweets Co. was a member of a different consolidated group. If net losses of a member of one affiliated group were permitted to be offset against the net income of the same corporation while a member of a different affiliation the unit conception of an affiliation would fall. The losses within the group are deducted from the income of the group, and hence, all of the members have the benefit of such deductions. Here, for example, the net loss of the Lance Cough Drop Co. in the first six months was deducted from the income of the New York Sweets Co. in the same period. In the succeeding four months the net income of the Lance Cough Drop Co. was offset against the loss of the New York Sweets Co. If the entire net loss of the New York Sweets Co. were to be offset against its early gain, there would be, as to a part of it, a double deduction, since such part had already been offset against the net income of the Lance Cough Drop Co. This is contrary to the purpose of the statute. *Owensboro Conserve Co.*, 8 B. T. A. 615, 620. If, on the other hand, only the net loss of the affiiliated group were to be offset, the situation would be that the amount thereof may be affected by the operations of a member or members of the second affiliated group who were not members of the first group. Adhering, as we do, to the settled rule that an affiliated group shall be regarded as a unit for the purpose of computing the tax, we can find no basis upon which this deduction may be allowed, and it is therefore denied.

*Judgment will be entered in each proceeding for the respondent.*