GREEN RIVER DISTILLING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

E. LA MONTAGNE'S SONS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10604, 10610. Promulgated May 8, 1929.

*Mark J. Ryan, Esq.*, and *Wayne Johnson, Esq.*, for the petitioners.
*John D. Foley, Esq.*, for the respondent.

OPINION.

ARUNDELL: We are confronted at the threshold of our consideration by the Distilling Company's objection that the deficiency is void in that it is a deficiency for a period less than one year, viz., for the eight-month period from July 1, 1917, to February 28, 1918. In order that petitioner's position may more clearly appear, it is well to recite the pertinent facts and the argument outlining its objection to respondent's determination.

Prior to July 1, 1917, the Distilling Company kept its books, and presumably returned its income, on the basis of a fiscal year ending June 30. On February 28, 1918, it became affiliated with the Copperfield Company through the purchase by the latter of all of its capital stock. The record is without evidence to show whether the Distilling Company, following its affiliation, changed its accounting period to conform with that of the Copperfield Company, or otherwise. Subsequent to the affiliation the respondent determined the tax liability of the Distilling Company by computing the latter's tax liability for the eight-month period ended February 28, 1918, as a single corporate taxpayer, and for the remainder of the calendar year 1918 as a member of an affiliated group. The deficiency notice from which the instant appeal is taken relates to petitioner's tax liability for the eight-month period prior to which it became affiliated. The Distilling Company claims that the Revenue Act of 1918

does not recognize a taxable period of less than twelve months, except in the case of a voluntary change of a taxpayer's accounting period, and accordingly the deficiency being asserted against it for taxes for the eight months immediately preceding its affiliation, is "null and void."

Petitioner relies in support of its position on the case of *Bankers Trust Co.* v. *Bowers*, 295 Fed. 89, the reasoning of which we held in *Louis Hymel Planting & Manufacturing Co.*, 5 B. T. A. 910, and *Premier Packing Co.*, 12 B. T. A. 637, to be applicable to the case of a corporation under the Revenue Act of 1918. In that case the court said:

In the view we take, it will be unnecessary to consider the Constitutional questions presented; this, for the reason that section 226, subdivision (c) provides solely for the placing of income on an annual basis and for computation of the tax thereon in the case of a return for a period of less than one year where the change is made voluntarily by the taxpayer or pursuant to an order of the Commissioner. The fundamental scheme of title 2 of the Revenue Act is for a tax upon the net income of the taxpayer during an accounting period of 12 successive months. This general accounting period seems to be a predetermined measure to be applied to a taxpayer as income, and is not affected by his death or change of status within the period. The tax is imposed upon the entire net income for such period, and the return of such income constitutes his return for the period of 12 full months, even though he may have lived only a portion thereof. The exception to this is where a voluntary change is made in the accounting period by the taxpayer, or where it becomes involuntary in so far as the taxpayer is concerned by the Commissioner's declaring the taxable period terminated under section 250(g)   *   *   *.
*   *   * When during the year his status changes, and he becomes a taxpayer, or ceases to be one, is immaterial. If he received taxable income during any part of that year, and kept his books on a calendar year basis, a return is required of all such income derived from or received within the 12 months of such calendar year, and the return is for a period of 12 months.

As we understand the petitioner's reasoning, it is this: Section 230 of the Revenue Act of 1918 imposed a tax for each taxable year upon the net income of every corporation; section 200 defines the term taxable year as meaning the calendar year or the fiscal year ending during the calendar year, and covers a period of 12 months; the only exception to the requirement that the taxable period be a period of 12 months is found in section 226 and that exception is where a taxpayer, with the approval of the Commissioner, changes the basis of computing net income from a fiscal year to a calendar year, or vice versa, a return being required under said circumstances for the short period. Petitioner would also probably concede, as pointed out in the *Bankers Trust Co.* decision, that a shorter period than 12 months may be used as a basis in a case where the Commissioner declares a taxable period terminated under section 250(g).

We do not have in the instant case any of the exceptions pointed out in the preceding paragraph, and if a departure from the general rule is to be justified, it must be based on other provisions of the statute than as set forth in section 226 and 250 (g).

It can not be doubted that, when the Copperfield Company on February 28, 1918, became the owner of all of the capital stock of the Distilling Company, these two corporations became affiliated within the meaning of section 240 of the Revenue Act of 1918 and that their tax liability must thereafter be computed as a unit. Certainly, in so far as the computation of the tax is concerned, the Distilling Company's existence as a separate corporation ceased. Section 240 provides that corporations which are affiliated within the meaning of that section shall under regulations to be prescribed by the Commissioner, with the approval of the Secretary, make a consolidated return of their net income and invested capital and taxes shall be computed and determined upon the basis of such return. In conformity with the authority granted by section 240, the Commissioner did promulgate regulations, with the approval of the Secretary of the Treasury, covering the manner in which returns should be made by companies affiliated within the meaning of the statute. Article 638 of Regulations 45, promulgated in the manner set forth above, provides that in the case of all consolidated returns, consolidated invested capital must be computed as of the beginning of the taxable year of the parent or principal reporting company and consolidated income must be computed on the basis of its taxable year. This regulation further provides that whenever the fiscal year of one or more subsidiary or other affiliated corporations differs from the fiscal year of the parent or principal corporation the Commissioner should be advised by the taxpayer in order that provision may be made for assessing the tax in respect of the period prior to the beginning of the fiscal year of the parent or principal company.

It is apparent that the Distilling Company's tax liability was determined in accordance with the Commissioner's regulations, which regulations, if reasonable, have the force and effect of law. These regulations were certainly not specifically attacked by the petitioner, and in our opinion serve to carry out the intent and purpose of the law. We believe that section 240 must be read in *pari materia* with sections 230 and 200 of the Act and that, in a case where two corporations become affiliated within the meaning of section 240 during their taxable year, the Commissioner may require a return and compute the tax for the short period in the same manner that is permitted by section 226, where there is a change in the accounting period from a calendar year to a fiscal year or vice versa. See

*American La Dentelle Co.,* 1 B. T. A. 575; *Baker-Vawter Co.,* 7 B. T. A. 594; and *Sweets Co. of America,* 12 B. T. A. 1285.

Petitioner's second assignment of error is that the respondent erred in determining the deficiency for the eight-month period by (a) reducing invested capital to eight-twelfths of the average capital of that period, and (b) refusing to allow a greater excess-profits and war-profits credit than eight-twelfths of the amount allowable for a full year.

The Distilling Company offered no evidence in proof of the fact that its average invested capital was greater than that determined by the respondent for the eight-month period. Its objection to the determination goes only to the question of whether respondent, after computing the average invested capital for the eight-month period, erred in reducing it one-third to arrive at the average invested capital to be used in the computation of the tax for such period. In considering the first assignment of error we reached the conclusion that petitioner was required to make a return for the eight-month period before it became affiliated and that its tax should be computed for those eight months on the basis of a return for a fractional part of a year. Section 326(d) provides that " the invested capital for any period shall be the average invested capital for such period, but in the case of a corporation making a return for a fractional part of a year it shall   *   *   *   be the same fractional part of such average invested capital." The method used by the Commissioner in determining petitioner's invested capital for the eight-month period appears to be in accordance with section 326(d), and, if we are correct in our conclusion that the return for this period is a return for a fractional part of a year, then the method used by the Commissioner in determining petitioner's invested capital is, in our opinon, correct. This method of treatment also serves to harmonize the adjustments incident to the determination of the tax liability of corporations operating as separate units during a portion of the taxable year and during the balance of the year as affiliated with other corporations. To determine taxpayer's invested capital otherwise than on the basis proposed by the respondent would be to allow the petitioner the benefit of invested capital for the purpose of determining its proper tax liability for a given period, both as an individual taxpayer and as a member of an affiliated group.

In computing the excess-profits credit of the Distilling Company for the period in controversy, the respondent, after increasing the figure of $97,196.72, representing 8 per centum of the average invested capital for the eight-month period, by the specific exemption of $3,000, reduced the total by eight-twelfths. The war-profits credit

was determined by increasing the average net income for the prewar period by 10 per centum of the difference between the average invested capital for the prewar period and the full average invested capital for the taxable period, and the specific exemption of $3,000, and then reducing the total of $450,557.98 one-third.

Section 312 of the taxing statute provides that in addition to a specific exemption of $3,000, the excess-profits credit shall consist of an amount "equal to 8 per centum of the invested capital for the taxable year."

Section 311(a) provides that the war-profits credit shall consist of a specific exemption of $3,000, and,

An amount equal to the average net income of the corporation for the prewar period, plus or minus, as the case may be, 10 per centum of the difference between the average invested capital for the prewar period and the invested capital for the taxable year. If the tax is computed for a period of less than twelve months such amount shall be reduced to the same proportion thereof as the number of months in the period is of twelve months.

Section 326(d) states:

The invested capital for any period shall be the average invested capital for such period, but in the case of a corporation making a return for a fractional part of a year, it shall (except for the purpose of paragraph (2) of subdivision (a) of section 311) be the same fractional part of such average invested capital.

Our conclusion being that the return is for the eight-month period, it is apparent that the computation made by the respondent is correct

The respondent in computing the Distilling Company's invested capital for 1913 for war-profits-credit purposes, reduced the amount of current earnings available for the payment of dividends by a tentative tax. This was error. *L. S. Ayers*, 1 B. T. A. 1135.

In his computation of the Distilling Company's invested capital the respondent reduced the amount thereof $10,462.94, on account of income and profits taxes assessed for the taxable years ending in 1916 and 1917. The respondent also adjusted the invested capital of E. La Montagne's Sons, Inc., on account of income and profits taxes assessed for prior years, but the evidence does not disclose the years for which the assessments were made or the amount by which invested capital was reduced. The tax liability of the Distilling Company for the fiscal year ended June 30, 1917, and that of E. La Montagne's Sons, Inc., for the calendar year 1917, were before the Board in proceedings under Dockets Nos. 10293 and 10294. In accordance with stipulations filed by the parties that collection of the deficiencies was barred by the statute of limitations, on March 7, 1928, the Board entered an order in each case deciding that there was no deficiency for the taxable years involved. The amount by

which invested capital was reduced by reason of the outlawed deficiencies involved in those proceedings should be restored to invested capital in determining the deficiencies in controversy here. *Lancaster Lens Co.*, 10 B. T. A. 1153, and *National Products Co.*, 11 B. T. A. 511. Petitioners have not introduced any evidence showing that the other adjustments made to invested capital on account of prior years' taxes are contrary to the applicable regulations. Accordingly, the respondent's action in that respect is sustained.

The respondent, by appropriate pleadings filed prior to or at the hearing, claims error in allowing as deductions from the gross income of the petitioners certain sums set forth in our findings of fact as obsolescence of good will. The petitioners admit the correctness of the figures and are not contesting the present position of the respondent. The disallowance of the items as deductions from gross income is sustained. *Manhattan Brewing Co.*, 6 B. T. A. 952; *Red Wing Malting Co.* v. *Willcuts*, 8 Fed. (2d) 180; 15 Fed. (2d) 626; *Frederick C. Renziehausen*, 8 B. T. A. 87; affd. 31 Fed. (2d) 675.

*Judgment will be entered under Rule 50.*